## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MICHELLE HAAKE, INDIVIDUALLY | ) | |
| AND AS ADMINISTRATOR OF THE | ) | |
| ESTATE OF WALTER EDWARD HAAKE, JR., | ) | |
| et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | CIVIL ACTION |
| | ) | |
| v. | ) | 08-cv-2537 KHV |
| | ) | |
| THE COUNTY OF SHAWNEE COUNTY, | ) | |
| KANSAS, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Michelle Haake, individually and as administrator of the Estate of Walter Edward Haake, Jr. ("the Estate"), Patricia J. Haake, Matthew Haake and Marshall Haake bring suit against the County of Shawnee County, Kansas, Sheriff Richard Barta, Deputy Jason B. Mills and Deputy Shayna Johnson, all in their individual and official capacities, and TASER International, Inc. for claims arising from the death of Walter Edward Haake.[1] Specifically, under 42 U.S.C. § 1983 and Kansas law, plaintiffs assert claims for excess force, outrage, negligence, assault and battery, wrongful death and product liability. This matter is before the Court on TASER International, Inc.'s Motion To Dismiss Certain Requests For Damages (Doc. #9) filed December 29, 2008. For reasons stated below, the Court sustains defendant's motion in part.

---

[1]     Patricia J. Haake is the wife of decedent. Michelle, Matthew and Marshall Haake are his children. See Complaint (Doc. #1) filed October 28, 2008 ¶¶ 3-4. The Court collectively refers to Patricia, Michelle, Matthew and Marshall Haake as the Haake family.

**Legal Standards**

In ruling on defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiffs.  See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  In other words, plaintiffs must allege facts sufficient to state a claim which is plausible rather than merely conceivable on its face.  See id.  The Court makes all reasonable inferences in favor of plaintiffs. See Zinermon, 494 U.S. at 118; see also Rule 8(a), Fed. R. Civ. P.; Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993). The Court, however, need not accept as true those allegations which state only legal conclusions.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  In reviewing the sufficiency of plaintiffs' complaint, the issue is not whether plaintiffs will prevail, but whether they are entitled to offer evidence to support their claims.  See Scheuer v. Rhodes, 416 U.S. 232, 236, (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements which they must prove.  See Hall, 935 F.2d at 1110.

**Facts**

Plaintiffs allege the following facts which the Court accepts as true for purposes of ruling on defendants' motion.

On March 29, 2008, Walter E. Haake, Jr. went to work at the Goodyear tire and rubber plant

in Topeka, Kansas.  <u>Complaint</u> (Doc. #1) filed October 28, 2008 ¶ 14.[2]  During his shift, Haake's

co-workers noticed that he did not feel well and that he appeared to be confused and disoriented.

<u>Id</u>.  At the end of the shift, Haake refused medical treatment from Goodyear's onsite medical

personnel and indicated that he was going home.  <u>Id.</u> ¶ 15.  Haake's co-workers persuaded him to

ride in Goodyear's medical cart to his car.  <u>Id.</u>

 Concerned that Haake planned to drive in a confused and disoriented state, his co-workers

contacted the Shawnee County Sheriff's Department and American Medical Response.  <u>Id.</u> ¶ 16.

At 11:17 p.m., Deputy Shayna Johnson arrived at Goodyear and found Haake in the driver's seat of

his vehicle.  <u>Id.</u> ¶ 17.  Haake stated that intended to drive home.  <u>Id.</u>  His co-workers informed

Johnson that he seemed disoriented and was not acting like himself.  <u>Id.</u>  Deputy Jason Mills and the

Emergency Medical Technicians ("EMTs") from American Medical Response arrived shortly

thereafter.  <u>Id.</u> ¶ 18.  Haake denied medical assistance from the EMTs.  <u>Id.</u>

 Johnson noticed Haake's car keys in a bag in his car.  <u>Id.</u> ¶ 20.  Johnson removed the keys

and gave them to Mills.  <u>Id.</u>  Subsequently, Mills told Haake that if he did not exit the vehicle,

officers would use force to remove him.  <u>Id.</u> ¶ 21.  Haake did not comply.  <u>Id.</u> ¶ 22.  Mills grabbed

Haake by the left arm in a manner to force him out of the vehicle.  <u>Id.</u>  Mills and an EMT attempted

to release Haake's right hand from the steering wheel, but they were unsuccessful in removing him

from the car.  <u>Id.</u>

 Mills ordered Johnson to use her TASER stun gun to neutralize Haake.  <u>Id.</u>  At 11:44 p.m.,

Johnson stunned Haake on his left thigh but still could not remove him from the car.  <u>Id.</u> ¶ 25.  She

applied a second stun to the same area of his leg but still could not remove him from the car.  <u>Id.</u>

---

[2] The record does not reflect Haake's job at Goodyear.

Mills ordered Johnson to move to the passenger side and apply a third stun on Haake's right arm. Id. ¶ 26.  After the third stun, Haake released the steering wheel.  Id. ¶ 28.  Mills and Johnson forcibly removed him from the vehicle and held his face to the ground and handcuffed him.  Id. ¶¶ 28-29.

At 11:47 p.m., officers rolled Haake over and sat him in an upright position.  Id. ¶ 30.  At that time, Haake was dead due to multiple electrocutions by the TASER and/or being slammed to the ground and held down by officers and an EMT.  Id.  Haake's face was turning blue.  Id. ¶ 31. An EMT checked for a pulse and announced that he had "coded."  Id.  The EMTs laid Haake on his back, still handcuffed, and administered cardiopulmonary resuscitation ("CPR").  Id. ¶ 32.  At 11:57 p.m., Mills notified dispatch that Haake was "code red."[3]  Id. ¶ 32.  Officers subsequently removed the handcuffs from Haake's body.  Id. ¶ 33.  The EMTs transported him to Stormont Vail Hospital in Topeka, Kansas, where doctors pronounced him dead.  Id.

TASER markets and intends its stun gun to deliver a non-lethal shock.  Id. ¶ 75.  The TASER gun which Johnson used on Haake was defective because TASER manufactured it in a way that would deliver a lethal dose of electricity.  Id. ¶ 77.  This manufacturing defect rendered the product unreasonably dangerous to an extent beyond which an ordinary consumer with ordinary knowledge common to the community as to its characteristics would contemplate.  Id. ¶¶ 73, 77.  TASER did not provide adequate warnings of the danger inherent in using the product on a human.  Id. ¶ 74. The manufacturing defects and inadequate warnings proximately caused Haake's death.  Id. ¶¶ 74, 78.  TASER's actions and/or omissions were willful, wanton, malicious and/or in conscious disregard of plaintiffs' rights.  Id. ¶ 83.

---

[3]      The record does not reflect the meaning of "coded" or "code red."

## Analysis

Plaintiffs assert two claims against TASER.  In Count VI, the Estate asserts a strict liability claim under Kansas product liability law.  See Complaint (Doc. #1) at 16-17.  In Count VII, the Haake family asserts a wrongful death claim under K.S.A. §§ 60-1901 et seq. based on strict liability under Kansas product liability law.  See id. at 18.[4]  TASER asserts that plaintiffs have not alleged facts sufficient to support a claim for punitive damages under Count VI or emotional distress damages under Count VII.[5]

## I.      Punitive Damages Under Count VI

In Count VI, the Estate alleges that TASER is strictly liable under Kansas products liability law.  TASER asserts that plaintiffs have not alleged facts sufficient to recover punitive damages on this claim.  To state a claim for punitive damages, plaintiffs must allege that defendant acted with willful or wanton conduct, fraud or malice.  See Messer v. Amway Corp., 210 F. Supp.2d 1217, 1236 (D. Kan. 2002).

TASER contends that in Count VI, plaintiffs have not alleged willful, wanton, fraudulent or malicious actions.  None of the allegations in Count VI (or the previous allegations which are incorporated therein) state that TASER acted with willful or wanton conduct, fraud or malice.  See Complaint ¶¶ 1-78.  In paragraph 83 of Count VII, however, plaintiffs state that the conduct described in Count VI was "willful, wanton and/or malicious, and/or in conscious disregard of

---

[4]      In Counts I through V, plaintiffs assert claims against Shawnee County, Barta, Mills and Johnson for unconstitutional use of excessive force, outrage, negligence, assault and battery and wrongful death.

[5]      Defendants also contend that plaintiffs cannot recover punitive damages under Count VII or attorneys' fees under Counts VI and VII.  Plaintiffs concede these issues.  The Court therefore dismisses plaintiffs' claims for these damages.

Plaintiffs' rights." Id. ¶ 83. Plaintiffs assert that under notice pleading requirements, paragraph 83 is sufficient to put TASER on notice that plaintiffs contend that the conduct alleged in Count VI was willful, wanton, malicious or in conscious disregard of plaintiffs' rights. See Plaintiffs' Memorandum In Support Of Response In Opposition To Taser International, Inc.'s Motion To Dismiss Certain Requests For Damages ("Plaintiffs' Response") (Doc. #19) filed January 21, 2009 at 7-8. The Court agrees. Under notice pleading requirements, plaintiffs must provide "a short and plain statement of the claim showing that [they are] entitled to relief," Fed. R. Civ. P. 8(a)(2), to give defendant fair notice of their claim and the grounds upon which it rests. See Smith v. United States, ___ F.3d ___, 2009 WL 820177, at *11, Nos. 07-3242, 08-3109 (10th Cir. March 31, 2009). Ideally, plaintiffs should have included the punitive damages allegation under Count VI. Nevertheless, paragraph 83 provides TASER sufficient notice of the claim, particularly since it refers specifically to the conduct alleged in Count VI.

TASER contends that the punitive damage allegations are conclusory and insufficient to state a claim. The Court disagrees. Plaintiffs allege that TASER manufactured a defective product and gave inadequate warnings with willful, wanton and malicious intent. Because willfulness allegations are subject only to liberal notice pleading standards, see Fed. R. Civ. P. 9(b) (fraud and mistake must be stated with particularity; conditions of mind may be alleged generally), defendant is entitled only to the most basic allegations which state a plausible claim for relief. See, e.g., In re TJX Cos., Inc., No. 07-MD-1853-KHV, 2008 WL 2020375, at *3 (D. Kan. May 9, 2008). Here, plaintiffs have sufficiently alleged willful conduct which TASER can admit or deny. The Court will not dismiss plaintiffs' claim for punitive damages on this ground.

## II.      Emotional Distress Damages Under Count VII

In Count VI, the Haake family asserts a wrongful death claim against TASER based on Kansas products liability law.  TASER contends that plaintiffs have not alleged facts sufficient to recover emotional distress damages on this claim.  Plaintiffs can recover damages for emotional distress "in cases of a wrong where the act is wanton or willful or where the act is committed with malice and intended to cause mental distress." Perry v. St. Francis Hosp. & Med. Ctr., Inc., 865 F. Supp. 724, 729 (D. Kan. 1994) (quoting Bowman v Doherty, 235 Kan. 870, 876, 686 P.2d 112, 118 (1989)).

TASER asserts that plaintiffs allege only conclusions and do not plead allegations sufficient to support their claim for emotional distress damages.  As discussed, Rule 8(a)(2) requires only that plaintiffs provide "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2).  Here, plaintiffs allege the following facts:

> The TASER was an unreasonably dangerous product at the time the TASER left the Defendant TASER's control.  The TASER was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics.  The defect that existed within the TASER at the time that it left the TASER Defendant's control was a defect in design, manufacturing and warnings.  The warnings that accompanied the TASER rendered the product defective because the warnings did not allow for the safe use of the product.
>
> A manufacturer or seller that knows or should know that a product is potentially dangerous to users has a duty to give adequate warnings of such danger where injury can be reasonably anticipated if an adequate warning is not given.  The TASER Defendant failed to provide adequate warnings of such danger inherent in the use of this product on another human being.  Such failure to provide adequate warnings was a proximate cause of Plaintiff's death.
>
> The TASER Defendant's TASER was defective in design in that it allowed for an excessive amount of electricity to be delivered into Walter E. Haake, Jr. thereby causing his death. Specifically, the TASER is marketed and intended to be designed to deliver non-lethal electrical shock to a subject, which did not occur here. Either

through a lack of research and/or testing, that the TASER Defendant is required to perform, a lethal dose was given to Walter E. Haake, Jr.  This defect in design rendered the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it and/or uses it, with the ordinary knowledge common to the community as to its characteristics.

The TASER Defendant's TASER was defective in its manufacturing in that it was manufactured in a way that would allow a lethal dose of electricity to be delivered into an individual, thereby causing an individual's death.  This defect in manufacturing rendered the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it and/or uses it, with the ordinary knowledge common to the community as to its characteristics.

Complaint (Doc. #1) ¶¶ 73-77, 82.  Plaintiffs allege that TASER committed these acts with willful, wanton or malicious intent, or in conscious disregard of plaintiffs' rights.  See id. ¶ 83.  Accepting the allegations as true, plaintiffs have stated a plausible claim for emotional distress damages.

**IT IS THEREFORE ORDERED** that TASER International, Inc.'s Motion To Dismiss Certain Requests For Damages (Doc. #9) filed December 29, 2008 be and hereby is **SUSTAINED in part.**  The Court dismisses plaintiffs' claims for punitive damages under Count VII and attorneys' fees under Counts VI and VII.  All other claims remain in the case.

Dated this 8th day of April, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

-8-